

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

No. 02-18-00162-CR

———————————————————

MAGDIEL VALENCIA JR., Appellant

V.

THE STATE OF TEXAS

---

On Appeal from the 431st District Court
Denton County, Texas
Trial Court No. F16-2011-431

---

Before Sudderth, C.J.; Gabriel and Womack, JJ.
Memorandum Opinion by Justice Womack

## MEMORANDUM OPINION

## I. INTRODUCTION

A jury convicted Magdiel Valencia Jr. of the offense of attempted sexual assault. Valencia sought punishment from the trial court, which sentenced him to confinement for ten years. In a single issue, Valencia challenges the sufficiency of the evidence to support his conviction. We affirm the trial court's judgment.

## II. BACKGROUND

### A. Investigation

On November 12, 2015, Detective Trevor Taylor of the Frisco Police Department began an investigation into a reported sexual assault by Valencia on Jacqueline[1] at Massage Envy in Frisco, Denton County, Texas. As a result of that investigation, Taylor identified and contacted other Massage Envy clients, including Kimberly and Julie.

On February 16, 2016, Taylor called and spoke with Kimberly about her experience at Massage Envy. Kimberly, who was in the presence of her husband during the call, immediately "broke down." Kimberly subsequently spoke several times with Taylor by telephone, and those conversations were recorded. Although Jacqueline's report of sexual assault triggered the investigation, Valencia was

---

[1]We have replaced the names of the clients with pseudonyms.

eventually indicted for committing the offense of attempted sexual assault on Kimberly.

## B.     Trial

### 1.     Kimberly's Testimony

On October 17, 2015, a few weeks after her father had died, Kimberly visited Massage Envy in Frisco. Kimberly had received only one other massage and that was approximately two years earlier.

Valencia was Kimberly's massage therapist and was the first male from whom she had received a massage. Kimberly completed forms and specified problem areas including her neck and upper back and noted that she had varicose veins in her legs.

After Valencia led Kimberly to the massage room, they discussed her paperwork, and Valencia informed Kimberly that he would be unable to massage her legs due to her varicose veins. After Valencia left the room, Kimberly undressed down to her thong underwear and laid face-down on the massage table under a sheet that covered her body up to her armpits.

Valencia reentered the room and began massaging the head area of Kimberly's upper back and shoulder area and then moved to her left side and began caressing her hand by interlocking fingers in a very sensual way, which Kimberly demonstrated at trial. Valencia took Kimberly's hand, repeatedly rubbed it against the crotch of his pants, and began breathing audibly. According to Kimberly, although she could feel

3

Valencia's erection, she thought to herself, "[T]his can't be happening[,]" and said nothing at the moment because she was "frozen."

As he began massaging Kimberly's back, Valencia's body was touching the top of her head. Kimberly was unable to see whether it was Valencia's crotch touching her head. Valencia moved to Kimberly's right side and began rubbing her right hand against his crotch. Valencia began massaging Kimberly's upper thigh in a kneading motion, which caused Kimberly's underwear to go "in between" and expose her vagina and "butt." Using a mannequin, Kimberly demonstrated how Valencia had repeatedly used his finger, made skin-to-skin contact, and touched her labia for a period "much longer" than "a few seconds."[2] Kimberly "[could not] believe this [was] happening[]" and admitted that there were portions of her experience that she could not remember. However, she remembered that while she was on her back, Valencia repeated the same contact of her leg and labia, making skin-to-skin contact and remaining within an inch of her labia when not making contact. Kimberly noticed Valencia's breathing had become audible.

At the end of the session, Valencia left the room, and Kimberly dressed. Valencia returned and asked Kimberly whether she "was okay." Kimberly paid, entered her car, and cried. She left without reporting her experiences to Massage

---

[2]Overruling defense counsel's objections, the trial court permitted the State to question Kimberly while using demonstrative evidence, including a table, a mannequin, and a sheet.

4

Envy, the police, or her husband because she was ashamed and was dealing with her father's death. The recorded telephone conversations between Taylor and Kimberly arising from Taylor's initial investigation of the case were admitted into evidence, and portions were later published to the jury.

## 2. Evidence of Intent or Absence of Mistake or Accident

The trial court allowed the State to offer through Julie and Jacqueline evidence that Valencia may have committed wrongful acts other than those charged in the indictment and repeatedly instructed the jury (1) that such evidence was to be considered only for the limited purpose of showing Valencia's intent or absence of mistake or accident with respect to the charged offense and (2) that consideration of the evidence for any other purpose would be improper.

### a. Julie's Testimony

During Julie's massage at Massage Envy in Frisco on November 11, 2015, Valencia massaged her upper thigh area in an up-and-down and then side-to-side motion and began massaging beneath her underwear, which made Julie uncomfortable. Valencia continued, placed his hand close to Julie's vaginal opening, made skin-to-skin contact, and then over five or six minutes touched but did not penetrate her vaginal opening several times. Julie "kind of froze and . . . was embarrassed" but did not say anything to Valencia. While Julie was on her back, Valencia again massaged her beneath her underwear and did "[t]he same thing." Julie knew this was wrong but did not know what to say and did not speak up. Although

5

Julie pulled her sheet up repeatedly, Valencia pushed the sheet down and massaged Julie's breasts inappropriately, skin-to-skin, below the sheet. Julie did not say anything but began to cry. Although Julie had specified before her massage began that she did not want her face touched, for several minutes Valencia nevertheless caressed Julie's lips and ear sensually and pulled on her ear. Julie did not speak up and waited "for it to be over." After she dressed, Julie complained to the front office and filed a complaint against Valencia.

b. *Jacqueline's testimony*

On November 12, 2015, Jacqueline went to Massage Envy in Frisco with her mother and sister. On a form completed prior to her massage, Jacqueline specified that it was acceptable for her face, scalp, and gluteus maximus area to be massaged. Jacqueline noticed that Valencia was focusing the massage high on her inner, upper thighs in the area where the thigh muscle meets the crotch, about one inch from Jacqueline's vagina. Jacqueline was in denial and did not want to think anything terrible was happening to her. While on her back, Valencia used a lot of painful pressure to massage Jacqueline's inner groin area and "basically touch[ed]" her vagina, touched her genitals with his hand, rubbed her "clitoris and outside," and then placed his finger inside Jacqueline's vagina. Valencia's breathing was "rather hard," and when she opened her eyes, Valencia's face was inches from Jacqueline's with his mouth open and his tongue sticking out as if to kiss her. When Jacqueline asked, "[W]hat are you doing?," Valencia responded, "Okay." Jacqueline believed that she

was sexually assaulted although she initially tried to convince herself during the massage that it was not happening. Jacqueline described herself as "frozen in my head" while she thought of what she should do, and Valencia then said, "[O]kay, we're finished with this session." Jacqueline informed a manager about Valencia's acts and then waited for and spoke with police and informed them that Valencia had placed his finger inside her vagina.

## III. DISCUSSION

### A. Sufficiency of the Evidence

In a single issue, Valencia contends that the evidence was not sufficient to convict him of attempted sexual assault. We disagree.

#### 1. Standard of Review

Federal due process requires that the State prove beyond a reasonable doubt every element of the crime charged. *Jackson v. Virginia*, 443 U.S. 307, 316, 99 S. Ct. 2781, 2787 (1979); *see* U.S. Const. amend. XIV. In our due-process evidentiary-sufficiency review, we view all the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the crime's essential elements beyond a reasonable doubt. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017). This standard gives full play to the factfinder's responsibility to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Queeman*, 520 S.W.3d at 622.

The factfinder alone judges the evidence's weight and credibility. *See* Tex. Code Crim. Proc. Ann. art. 38.04; *Queeman*, 520 S.W.3d at 622. Thus, when performing an evidentiary-sufficiency review, we may not re-evaluate the evidence's weight and credibility and substitute our judgment for the factfinder's. *Queeman*, 520 S.W.3d at 622. Instead, we determine whether the necessary inferences are reasonable based on the evidence's cumulative force when viewed in the light most favorable to the verdict. *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015); *see Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017) ("The court conducting a sufficiency review must not engage in a 'divide and conquer' strategy but must consider the cumulative force of all the evidence."). We must presume that the factfinder resolved any conflicting inferences in favor of the verdict, and we must defer to that resolution. *Murray*, 457 S.W.3d at 448–49.

The standard of review is the same for direct and circumstantial evidence cases; circumstantial evidence is as probative as direct evidence in establishing guilt. *Jenkins v. State*, 493 S.W.3d 583, 599 (Tex. Crim. App. 2016). We must scrutinize circumstantial evidence of intent as we do other elements of an offense. *Laster v. State*, 275 S.W.3d 512, 519–20 (Tex. Crim. App. 2009). But when a record supports conflicting inferences, we "must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflict in favor of the prosecution, and must defer to that resolution." *Matson v. State*, 819 S.W.2d 839, 846 (Tex. Crim. App. 1991).

## 2. Applicable Law

A person commits the offense of sexual assault if he intentionally or knowingly, without the complainant's consent, causes the penetration of the anus or sexual organ of another person by any means.[3] Tex. Penal Code Ann. § 22.011(a)(1)(A). A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result. *Id.* § 6.03(a). A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. *Id.* § 6.03(b). A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result. *Id.*

To attempt to commit sexual assault, the actor must have specific intent to commit the offense, which is established when the person does an act amounting to more than mere preparation that tends but fails to affect the commission of the intended offense. *Id.* § 15.01(a). The element "with specific intent to commit an offense" has traditionally been interpreted to mean that the actor must have the intent to bring about the desired result. *See, e.g.*, *Flanagan v. State*, 675 S.W.2d 734, 741 (Tex. Crim. App. [Panel Op.] 1982). Generally, a person's intent to commit an offense

---

[3]Because they are not relevant to our analysis in this case, we have omitted the other means by which the offense of sexual assault may be committed.

9

must be established by circumstantial evidence and may be inferred from the person's acts, words, and conduct, as well as the surrounding circumstances. *See Hernandez v. State*, 819 S.W.2d 806, 810 (Tex. Crim. App. 1991); *Romo v. State*, 568 S.W.2d 298, 304 (Tex. Crim. App. 1977) (stating that actor's intent to complete the offense may be inferred from his acts). To prove that Valencia committed attempted sexual assault, the State was required to show that Valencia, with specific intent to commit sexual assault against Kimberly, performed an act—touching the sexual organ of Kimberly with Valencia's finger—that amounted to more than mere preparation that tended, but failed, to effect the commission of the offense. *See* Tex. Penal Code Ann. §§ 15.01(a), 22.011(a)(1)(A).

## B. Analysis

### 1. Terminology

Valencia's challenge to the sufficiency of the evidence to support his conviction is founded in part on his assertion that the State was required to prove that he had attempted but had failed to touch a specifically identified portion of Kimberly's sexual organ and that the State's witnesses' testimony was general and non-specific. Valencia specifically complains that the State's witnesses failed to use specific terms to differentiate the component parts of "the female sexual organ" and instead used general terms, which rendered it impossible for a rational jury to find that he knowingly or intentionally attempted to penetrate Kimberly's sexual organ. Essentially, Valencia asserts that the jury could properly reach its verdict only by

10

concluding that he had attempted but failed to touch Kimberly's sexual organ beyond the labia majora and argues that because the testimonial evidence at trial only generally referred to "labia"—rather than specifically to the terms "labia majora," "labia minora," or to a particular labium—and to the vernacular term "vagina," the evidence is insufficient to permit a rational juror to deduce that he tried but failed to penetrate Kimberly's female sexual organ.

The attempted sexual assault offense alleged in this case did not require an act of penetration, and the State's burden was not to prove penetration of Kimberly's female sexual organ. *See Steadman v. State*, 280 S.W.3d 242, 247–48 (Tex. Crim. App. 2009) (explaining that vaginal penetration is not required; only penetration of the female sexual organ). Rather, the State was required to prove that with the specific intent to commit sexual assault, Valencia performed an act, alleged to have been the touching of Kimberly's female sexual organ with Valencia's finger, that amounted to more than mere preparation that tended, but failed, to effect the commission of sexual assault. The court of criminal appeals has observed that "female sexual organ" is a common term that has not acquired a technical meaning, and jurors are permitted to interpret the term according to common usage. *Green v. State*, 476 S.W.3d 440, 445 (Tex. Crim. App. 2015) (holding that court of appeals correctly determined that trial court's inclusion of non-statutory definitions of terms "penetration" and "female sexual organ" in jury charge was improper because they are common terms that have not acquired a technical meaning).

In the application section of his brief, Valencia attempts to rely on Justice Dauphinot's dissent in *Rushton v. State*, No. 02-11-00419-CR, 2013 WL 709060, at *8 (Tex. App.—Fort Worth Feb. 28, 2013, no pet.) (mem. op., not designated for publication) (Dauphinot, J. dissenting) (discussing the use or misuse of specific terminology relating to the female sexual organ). *Rushton* is distinguishable in part because the indictment in that case alleged multiple offenses—none of which involved attempt as this case does—and unlike this case, the appellant in *Rushton* challenged the jury charge for its failure to specify the manner of contact. 2013 WL 709060, at *1.

## 2. Sufficient Evidence

Valencia posits that although Julie's and Jacqueline's testimony was offered as evidence that he had acted intentionally and knowingly when touching Kimberly, that evidence bears no connection to Kimberly's claim of attempted sexual assault and did not permit the jury to conclude that he had attempted but failed to penetrate Kimberly's sexual organ. However, as the trial court repeatedly cautioned the jury during trial, Julie's and Jacqueline's testimony was admitted for the limited purpose of showing Valencia's intent or absence of mistake or accident in relation to the commission of the offense. *See* Tex. R. Evid. 404(b)(2) (stating that evidence of a crime, wrong, or other act may be admissible for purposes of proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident).

Moreover, the jury was permitted to infer Valencia's intent from his acts, words, and conduct, as well as the circumstances surrounding those acts, words, and conduct. *See Hernandez*, 819 S.W.2d at 810; *Romo*, 568 S.W.2d at 304. The acts and conduct that support the jury's inference of intent were established by Kimberly's testimony that Valencia had massaged her hands sensually, had placed her hands on his erect penis, had "kneaded" her upper thighs near her buttocks so as to expose her vaginal area, had touched or grazed her labia with his finger or hand repeatedly while Kimberly was on her stomach and back and had rubbed her within one inch of her labia, and had begun breathing audibly as the massage therapy session progressed.

After viewing the record in the light most favorable to the verdict, we conclude that a rational juror could have found that Valencia, with specific intent to commit sexual assault, performed an act—touching Kimberly's female sexual organ with Valencia's finger—that amounted to more than mere preparation that tended, but failed, to effect the commission of the offense. *See* Tex. Penal Code Ann. §§ 15.01(a), 22.011(a)(1)(A). Because the evidence is sufficient to support Valencia's conviction for the offense of attempted sexual assault beyond a reasonable doubt, we overrule Valencia's sole issue.

## IV. CONCLUSION

Having overruled Valencia's sole issue, we affirm the trial court's judgment.

13

/s/ Dana Womack

Dana Womack
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: July 3, 2019